*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 21, 2019

Plaintiff-Appellee,

v

No. 343305
Oakland Circuit Court
LC No. 2017-264428

KYLE AUSTIN NELSON,

Defendant-Appellant.

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of one count of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b), for sexual contact with his 15-year-old nephew, and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a), for sexual contact with a 13-year-old family friend. Defendant contends that he was improperly convicted by an "anonymous" jury, but this claim lacks merit and we affirm defendant's convictions. However, the trial court erred in scoring defendant's offense variables, failed to adequately support defendant's upwardly departing sentence, and expressed contempt for defendant on the record. Accordingly, we vacate defendant's sentences and remand for resentencing before a different circuit court judge. If the court imposes an upwardly departing sentence, the court must articulate the reasons for departing from the sentencing guidelines pursuant to *People* v *Steanhouse*, ___ Mich ___; 933 NW2d 276 (2019) (*Steanhouse III*).

## I. BACKGROUND

Defendant's convictions arise from two incidents in which he touched the penis of teenaged boys. Both incidents occurred in his bedroom in the home he shared with his mother and older brother. Defendant's nephew, BH, visited his father in the home on alternating weekends, and BH's friend, NF, was often present. In 2014, when defendant was 20 years old and NF was 13 years old, NF visited defendant to spend time with him outside of BH's presence. During that visit, defendant took NF to his bedroom, locked the door, and turned on a pornographic movie. Defendant grabbed NF's penis and masturbated the boy.

-1-

In 2017, when defendant was 23 years old and his nephew 15 years old, defendant engaged in similar conduct with BH. One night after their other family members had gone to bed, defendant invited BH to his bedroom to watch a television show that he was not otherwise permitted to watch. While lying on defendant's bed, defendant put his hand inside BH's underwear and grabbed his penis. BH protested and defendant removed his hand.

## II. ANONYMOUS JURY

Defendant does not present a direct challenge to the evidence supporting his convictions. Rather, defendant argues that his convictions must be vacated because he was denied due process by the trial court's use of an "anonymous" jury. We review this unpreserved challenge for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). We may vacate defendant's conviction only if the anonymous nature of the jury prevented meaningful voir dire or compromised defendant's presumption of innocence. *People v Williams*, 241 Mich App 519, 523; 616 NW2d 710 (2000).

During voir dire, the court referred to the prospective jurors by their seat or juror badge number rather than by name. The courtroom was video-recorded for the transcriptionist's later use. The court notified the jury venire that this system did not capture images inside the jury box. Despite these practices, defendant's jury was not truly "anonymous." Both attorneys had access to the juror questionnaires, and defendant was able to meaningfully question the potential jurors during voir dire.

Referring to jurors by number rather than name is a common practice used by many courts in this state and creates an anonymous jury only in the strictest sense of that term. *Id*. This Court has already concluded that the practice of referring to jurors by number does not by itself compromise the presumption of innocence. *Id*. at 523-525. Defendant has not identified any irregularity in the proceedings that would cause us to depart from this precedent. Moreover, the trial court instructed the jury regarding the presumption of innocence and the burden of proof in its final instructions. "[J]urors are presumed to follow their instructions." *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). Accordingly, defendant is not entitled to relief.

## III. OV 19

At the sentencing hearing, the court accepted the prosecutor's suggestion that Offense Variable (OV) 19 be scored at 10 points. Ten points are assessed for OV 19 when "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice." MCL 777.49(c). The court determined that this score was appropriate because defendant "perjured" himself at trial.

The proper interpretation of the sentencing guidelines is a legal question that we review de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to

satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

"[A] trial court may consider perjured testimony at sentencing." *People v Adams*, 430 Mich 679, 681-682; 425 NW2d 437 (1988). "[W]hen the record contains a rational basis for the trial court's conclusion that the defendant's testimony amounted to wilful, material, and flagrant perjury," the "sentencing judge may consider the defendant's false testimony when passing sentence." *Id*. at 688, 693. But such perjury was not present in this case.

At defendant's trial, BH testified that the sexual assault occurred around midnight on the night in question. Defendant testified that on that evening, he left the house about 10:00 p.m. to visit a bar and did not return until after the bar closed at 2:00 a.m. Defendant testified that he did not see the victim when he got home. Defendant's brother testified on defendant's behalf, stating that he went to bed about midnight on the night in question and that he *did not know if defendant was home* before then. Defendant's brother opined, however, that his presence in the home would have made defendant's commission of the offense impossible.

The prosecutor advocated for scoring OV 19 for injecting a false alibi in the last moments of the trial. The prosecutor characterized defendant's testimony as denying that he was home during the timeframe in question, making it impossible for him to have committed the offense. The prosecutor erroneously summarized the testimony of defendant's brother, arguing that the brother claimed defendant was home the entire night. The prosecutor argued (again erroneously) that defendant must have perjured himself because his own defense witness testified that defendant was home all night and yet defendant took the stand and suddenly swore he was at the bar with his girlfriend. The trial court agreed with the prosecutor and assessed 10 points under OV 19.

On appeal, even the prosecutor concedes that the trial prosecutor erred. Defendant's brother's actual testimony—that he went to bed around midnight and could not remember if defendant was home—did not contradict defendant's testimony that he was gone from approximately 10 p.m. to 2 a.m. There was no ground to find that defendant committed perjury and the court improperly assessed 10 points for OV 19.

Defendant's total prior record variable (PRV) score of 10 placed him in PRV Level C and his total OV score of 50 placed him in OV Level V. The 10-point reduction in defendant's total OV score moves him to OV Level IV. The reduction in OV level reduces defendant's recommended minimum sentencing guidelines range. As the scoring error affected defendant's sentencing guidelines range, we must vacate defendant's sentences and remand for resentencing. *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006).

## IV. UPWARD DEPARTURE SENTENCE

As originally scored, defendant's minimum sentencing guidelines range was 36 to 71 months. His minimum sentence of nine years, or 108 months, was a more than three-year departure from the top of the guidelines. This minimum sentence is an even more substantial

departure from his corrected minimum guidelines range of 29 to 57 months. But the trial court did not adequately support the departure sentence in the first instance.

We review departure sentences for reasonableness, *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015), and review a lower court's determination that a particular sentence is reasonable for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017) (*Steanhouse II*). In determining whether a trial court abused its discretion by unreasonably departing from the sentencing guidelines, we consider whether the court conformed to the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). *Steanhouse II*, 500 Mich at 476-477. In this regard, we must consider whether the trial court acted within its discretion by imposing a sentence that is proportionate to the seriousness of the particular offense and the character of the particular offender. *People v Dixon-Bey*, 321 Mich App 490, 521; 909 NW2d 458 (2017). Trial courts may depart "when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *Milbourn*, 435 Mich at 657.

The statutory guidelines are "a useful tool" in selecting a proportionate sentence as they "embody the principle of proportionality." *Dixon-Bey*, 321 Mich App at 524. But a departure sentence may be "more proportionate" based on certain factors, such as "(1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines, but given inadequate weight." *Id*. at 525 (citations omitted). Factors not otherwise considered by the guidelines might include "the defendant's misconduct while in custody, the defendant's expression of remorse, and the defendant's potential for rehabilitation." *People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (*Steanhouse I*) (citations omitted). Based on these various factors, the court must support not only its decision to depart, but also the extent of the departure. *Milbourn*, 435 Mich at 660. The "trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been . . . ." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations omitted). Ultimately, the court must articulate on the record why it is departing from the sentencing guidelines and why the particular sentence imposed is more proportionate than the guidelines recommended sentence.

At sentencing, the trial court explained:

> The Court finds that the slight upward deviation, about a third to . . . less than a half, is reasonable in light of his serial preying and betraying of trust . . . of those minors that have been in his care or at least in his companionship. There is obviously a betrayal . . . of a relative of the highest nature. The fact that there are two victims over the course of several years shows that this is a long-standing pattern of child victimization. It's had an extraordinarily high impact and severe impact on the victims. We've just heard the destruction of one victim's relationship with an entire side of his family; . . . the other victim's grave psychological issues that have been happening, and . . . the ramifications for his family and what they've been going through.

I do not believe that the guidelines, to the extent that they do address these issues, do not address them significantly enough. They're . . . underweighted, especially although these both deal with - - they do deal with relation, . . . the way that - - the circumstances surrounding the egregious nature . . . of how these boys were wooed into these situations, I think demands more than just the standard guidelines.

After imposing sentence and on its own initiative, the trial court expressed in strong language its contempt for defendant's conduct:

His actions were despicable, odious, repulsive, repugnant, repellant, detestable, revolting, and rebarbative, and he has received the sentence that it warrants.

The trial court's explanation for imposing an upwardly departing sentence is flawed for several reasons. First, there is no evidence that defendant engaged in a "long-standing pattern of child victimization" "over the course of several years." Rather, the victims each testified about a single incident of sexual abuse, and those separate and distinct incidents were separated by a period of years. The court mischaracterized the record evidence in imposing the upwardly departing sentence.

Second, the court considered the elements of the convicted offenses as aggravating sentencing factors. Defendant was convicted of violating MCL 750.520c(1)(b) for engaging in sexual contact with a person between the ages of 13 and 16 who was a member of the same household and was related by blood (his nephew). As to the nonrelated victim, defendant was convicted of MCL 750.520e(1)(a) for engaging in sexual contact with a child between the ages of 13 and 16, while at least five years older than his victim. It is well-established that the Legislature considered the elements of the various criminal offenses when formulating the sentencing guidelines and selected proportional minimum and maximum penalties applicable to each. See *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). It may be that the facts of this case are so egregious that the Legislature's assessment of the offense elements when enacting the guidelines will not suffice. But the trial court must explain the statutory inadequacy on the record.

Third, the trial court relied on information already taken into account in the offense and prior record variables without explaining why the existing score was not adequate. The court assessed 10 points for PRV 7, reflecting that defendant had "1 subsequent or concurrent conviction." MCL 777.57(1)(b). The "serial" nature of defendant's conduct was taken into account under this variable. The psychological impact of an offense on a victim was taken into account in assessing 10 points for OV 4. MCL 777.34(1)(a). Defendant's predatory conduct toward his young, vulnerable victims formed the basis for his 15-point score for OV 10. MCL 777.40(1)(a). The court explained that it did "not believe that the guidelines, to the extent that they do address these issues, do not address them significantly enough" and that the guidelines were "underweighted." However, it made no attempt to connect its departure sentence to the

guidelines.[1]  See *People v Smith*, 482 Mich 292, 305-306; 754 NW2d 284 (2008); *Dixon-Bey*, 321 Mich App at 525.  If the trial court should select an upwardly departing sentence on remand, further elucidation will be required.

And finally, the court did not explain why the particular upwardly departing sentence was more proportionate to the current offense and offender than a within-guidelines sentence.  The trial court expressed that its departure of more than three years was slight and deemed it "reasonable" based on its incorrect description of defendant's offenses as a years-long serial pattern of behavior.  A departure sentence must be explained using accurate facts and assessments and the court must separately articulate a justification for the particular sentence chosen.

## V. ASSIGNMENT OF NEW JUDGE

Resentencing in this case must be conducted before a different circuit court judge.  In evaluating whether resentencing should take place before a different judge, we consider:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.  [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (quotation marks and citations omitted).]

"A case should be assigned to a different judge if it would be unreasonable to expect the trial judge, given her handling of the matter, to be able to put previously expressed findings out of mind without substantial difficulty."  *People v Pillar*, 233 Mich App 267, 270-271; 590 NW2d 622 (1998).

The trial court in this case used a long string of negative and pejorative adjectives, after announcing defendant's sentence, to describe defendant and the offenses of which he was convicted.  The court also stated on the record its belief that defendant perjured himself on the stand.  On this record, the original judge would "reasonably be expected upon remand to have *substantial difficulty* in putting out of his or her mind previously-expressed views" and reassignment would be necessary "to preserve the appearance of justice."  The judge revealed deep-seated personal views that would color his opinion on resentencing.  Therefore, reassignment on remand is required.

---

[1] For example, the court could have explained that OV 4 did not adequately account for the psychological injuries inflicted in this case as there were two victims, and NF's family members reported serious impacts that were not accounted for in the guidelines.

We affirm defendant's convictions, vacate his sentences, and remand for resentencing before a different circuit court judge.  We do not retain jurisdiction.


/s/ Amy Ronayne Krause
/s/ Elizabeth L. Gleicher